IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LATASHA WILLIAMS                                                                PLAINTIFF

v.                             No. 3:22-cv-2-DPM

HIBBETT, INC.; HIBBETT RETAIL, INC.;
HIBBETT WHOLESALE, INC.; HIBBETT
SPORTING GOODS, INC.; HIBBETT
SPORTS, INC.; CITY OF WYNNE,
ARKANSAS; JACKIE CLARK,
Individually and Employee of City of
Wynne Defendants; ANTHONY DALE
PARKER, Individually and Employee of
City of Wynne Defendants; STEVEN
HALLMARK, Individually and Employee
of City of Wynne Defendants; and
AMBER JEFFERSON, Individually and
Employee of Hibbett Defendants                                              DEFENDANTS

ORDER

Things went, as the saying goes, from bad to worse for Latasha Williams. Someone stole her identity and passed a bad $500 check at the Hibbett Sporting Goods store in Wynne. Police investigated. Williams was identified as the culprit. A warrant was issued for her arrest. In due course, after a routine traffic stop in her hometown of Conway, she was arrested, taken half-way across the state to Wynne, and spent the night at the jail there. The mistake in identity was eventually revealed. All the charges were dropped.

Williams has sued the city of Wynne, three of its police officers, various Hibbett entities, and two Hibbett employees. She claims violations of 42 U.S.C. § 1981, the Fourth Amendment, and the Fourteenth Amendment's Equal Protection and Due Process Clauses. She also presses several state-law tort claims. (See the attached chart.) The Court trimmed the claims in an earlier Order. *Doc. 40*. The defendants have filed separate motions for summary judgment on all the remaining claims. Williams does not dispute the Wynne defendants' statement of material facts, *Doc. 79*, "and consequently did not file a responding statement." *Doc. 103 at 2*. Those facts are therefore deemed admitted. LOCAL RULE 56.1(c). Where some dispute exists about the Hibbett defendants' material facts, the Court has taken the record in the light most favorable to Williams. *Oglesby v. Lesan*, 929 F.3d 526, 531-32 (8th Cir. 2019).

*

In July 2019, as Williams was driving home from the grocery store, a Conway police officer stopped her for a turn-signal violation. The officer ran her information and returned with a bombshell: Williams had a felony arrest warrant from Wynne. Williams thought it was a prank. She had never been to Wynne; nor had she ever been in trouble with the law. But after the officer invited her to view the computer screen in his police cruiser, she "almost wanted to faint in the

middle of the street." *Doc. 81-9 at 19*. Next to her name and driver's license were three charges: forgery, identity fraud, and theft.

Based on the warrant, the officer arrested Williams and took her to the Faulkner County Detention Center. Around midnight, a police officer from Wynne showed up to retrieve her. Williams spent the night shackled to a bench in the Cross County Detention Center. She was terrified and humiliated. Early the next morning, with the help of her family, friends, and church community, she posted a $50,000 bail bond and hired a lawyer. That's when she learned that someone had used her name to pass a bad check six months earlier. Here's what had happened.

In January 2019, a woman attempted to buy a $500 gift card from Amber Jefferson's register at the Hibbett store in Wynne. Jefferson asked the woman if she had a "Most Valuable Player" account — Hibbett's customer rewards program. The woman said yes, gave the name Latasha Williams, and said she lived in Conway. Jefferson searched Hibbett's company-wide computer system and found Williams's MVP account. Jefferson linked the sale to Williams's account, which included her Conway address and phone number.

The woman gave Jefferson a check, a Texas driver's license, and a Louisiana phone number. Jefferson's manager, Jason Stricker, had been working the adjacent register. He paused what he was doing to help Jefferson process the check. Stricker wrote the woman's driver's license

-3-

number and phone number on the check and returned to his register. Jefferson completed the sale, and the woman left the store. At that point, Jefferson asked Stricker to come back and initial the check. When he did, he noticed that it was missing a name and address in the top left corner and that it had rung up as a "mall certificate." He suspected fraud.

Stricker called the bank using the phone number that was printed on the check. The bank told him that the check was no good. Stricker then called the District Store Manager, Chad Arnold, to report the incident. Arnold told him to call Chuck Bailey, the Regional Asset Protection Manager. Bailey instructed him to call the police.

Stricker did so the next day. Officer Anthony Dale Parker of the Wynne Police Department responded and took both employees' statements. Stricker described the suspect as a heavy-set, "light skinned black female with little or no hair." Doc. 81-7. He gave Officer Parker the gift-card receipt—which had the name "Latasha Williams" printed at the top—and the fraudulent check. He also told the officer about Williams's MVP account; although he cautioned that these accounts could be set up under any name.

Detective Steven Hallmark of the Wynne Police Department began his investigation the next day. He confirmed that the check was fraudulent and followed up with both employees. Jefferson gave him a signed statement saying that the suspect identified herself as Latasha

Williams from Conway. Stricker provided Williams's MVP account information. Detective Hallmark ran Williams's Conway address through dispatch and got a match on her driver's license. He also ran the Texas driver's license number. It belonged to a woman from Cypress, Texas.

He pulled each woman's photograph and asked Jefferson to come view them at the police station. Jefferson reviewed both photos without being told which was which. She identified Williams. She said Williams's hair was different in the photo, but that she was "definitely" the woman in question. *Doc. 79 at 3*. Detective Hallmark sought and obtained a warrant for Williams's arrest the next day.

In March 2021, more than a year and a half after Williams's arrest, the prosecutor *nolle prossed* the charges. *Doc. 79-11*. No one here contends that she had anything to do with the bad check.

*

Some preliminaries.

*First*, Williams's official capacity claims against Officer Parker, Detective Hallmark, and Police Chief Clark drop out because they duplicate her claims against Wynne. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

*Second*, Williams and the Hibbett defendants scuffle about their statements of material fact and related briefing. The Court has relied on the record itself. Where some genuine dispute of material fact exists,

the Court has considered that record in the light most favorable to Williams. *Gannon International, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012). The dueling motions to strike various papers are denied.

*Third*, the Hibbett defendants also move to exclude, or limit, the opinions of Williams's expert. As will become clear, the Court's legal analysis stops before getting to the issues which the expert addresses. The motion to eliminate or trim his testimony is denied as moot.

*Last*, Williams hasn't shown that the Hibbett defendants were state actors for purposes of her § 1981 and § 1983 claims. *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 766-67 (8th Cir. 2016) (§ 1981's full-and-equal benefit clause); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) (§ 1983). Williams argues that statements from Chuck Bailey and Jason Stricker show concerted action between the Hibbett defendants and the city. *Doc. 97 at 11-13*. The Court disagrees.

Bailey testified on deposition that he "occasionally" communicated with police about grab-and-runs, burglaries, and incidents of internal theft. *Doc. 81-2 at 18*. And he noted: "It's up to the district attorney to actually prosecute." *Doc. 81-2 at 44*. Stricker went to the police station a couple weeks after the check-fraud incident to deal with an unrelated grab-and-run incident. While he was

there, a Wynne police officer told him that they had caught the woman who tried to pass the bad check. Stricker emailed that update to Bailey the next day. *Doc. 81-3 at 731*. At best, these statements show communication, not coordination. And "a private party's mere invocation of state legal procedures does not constitute state action." *Youngblood*, 266 F.3d at 855.

In any event, the Wynne Police Department conducted an independent investigation. Officer Parker stated he was unaware of any "relationship between Wynne Police Department and Hibbett Sports outside of them simply being a commercial operation in the city[.]" *Doc. 81-11 at 73*. No one from Hibbett asked Detective Hallmark to come out the next day to conduct his follow-up investigation. *Doc. 79-4 at 25*. And the parties agree that Hibbett offered "no monetary compensation Parker or any other police officer." *Doc. 97 at 13*. At bottom, nothing in the record suggests that Hibbett—or any of its employees—"willfully participate[d] in joint activity" with the Wynne Police Department. *Youngblood*, 266 F.3d at 855; *see also Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 558–59 (8th Cir.1989).

*

**Counts I–III.**\* Section 1981 gives all persons the same right to "make and enforce contracts." 42 U.S.C. § 1981. It "does not provide a

---

\* Williams clarified in her briefing that she meant to bring a § 1981 claim against the Wynne defendants under § 1983. *Doc. 87 at 5*;

-7-

general cause of action for race discrimination." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (*en banc*). Williams must therefore show four things to prevail on her § 1981 claims: (1) membership in a protected class; (2) discriminatory intent on the defendants' part; (3) that she engaged in a protected activity (making or enforcing a contract); and (4) that the defendants interfered with that activity. *Gregory*, 565 F.3d at 469.

Williams's § 1981 claims boil down to the third element — protected activity. There is no contention that she sought to "make" a new contract. That would have required "some tangible attempt" on her part to purchase the gift card. *Green v. Dillard's, Inc.*, 483 F.3d 533, 538-39 (8th Cir. 2007). Instead, she points only to her MVP account. As her lawyer puts it, "Williams's participation [in] the rewards program is a protected activity under § 1981 because it involves making and enforcing a contract." Doc. 93 at 25-26.

Williams is right about the contractual nature of her MVP account. As an accountholder, she earned "points" for every dollar that she spent in Hibbett's stores. In return, Hibbett offered a $10 reward for every 200 points she earned. This money-for-points and points-for-money deal gave Williams an enforceable right to redeem her customer

---

Doc. 103 at 2-3. She asserts her § 1983 claims under Counts IV and V. Apart from that wrinkle, the Court analyzes her § 1981 claims under the same framework.

–8–

rewards. *E.g., Withers v. Dick's Sporting Goods, Inc.*, 636 F.3d 958, 964-65 (8th Cir. 2011). Hibbett could not have discriminated against Williams at the checkout counter.

But Williams is mistaken about the legal significance of this account for her claims. She did not engage in a protected activity simply because she had "rights under an existing contractual relationship yet to be consummated." *Withers*, 636 F.3d at 964. In that case, for example, a black couple was discriminated against while shopping at a Dick's Sporting Goods. They sued Dick's, arguing that they had engaged in a protected activity by virtue "of having store credit in hand when they entered" its store. *Ibid.* The Court of Appeals rejected this argument. "At best, the store credit vested Appellants with the right to pay for their merchandise with the store credit if they chose to do so, and for Dick's to honor the store credit as payment if presented." *Ibid.*

That's the situation here. The mere existence of Williams's MVP account is insufficient to satisfy the "protected activity" element. She never sought to buy the gift card (make a new contract) or to redeem her customer rewards (enforce an existing contract). She was the victim of identity fraud. To the extent she has a remedy, it is not under § 1981.

**Count IV.** Williams presses several claims under § 1983 for various violations of her Fourth and Fourteenth Amendment rights.

Because the Hibbett defendants did not act under color of state law, the Court only considers Williams's claims against the Wynne defendants.

Williams's equal protection claim fails at the threshold. She has not identified a similarly situated individual of another race who was treated differently. *McDonald v. City of Saint Paul*, 679 F.3d 698, 705 (8th Cir. 2012).

Williams's Fourth Amendment malicious prosecution claim also fails. Based on the undisputed facts of record, the Wynne defendants had probable cause to seek the January 2019 arrest warrant. There is no indication that the officers had reason to doubt the reliability or trustworthiness of Jefferson's and Stricker's statements at the time. *Clay v. Conlee*, 815 F.2d 1164, 1168 (8th Cir. 1987). And although Detective Hallmark only presented Jefferson with two photographs, the photo lineup was not devoid of all probative value as to probable cause. *Pace v. City of Des Moines*, 201 F.3d 1050, 1055-57 (8th Cir. 2000). Plus, as was the case here, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]" *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (alteration original).

Williams argues that Jefferson's statements were unreliable because Hibbett caught her stealing money from her register in March 2019, two months after the gift-card incident. But the law inquires whether probable cause existed at the time the warrant

–10–

issued—in January 2019. *United States v. Kattaria*, 553 F.3d 1171, 1176 (8th Cir. 2009). It is undisputed that the police did not have this information at the time they sought and obtained the warrant. And they did not learn of it until after Williams was arrested. Absent some evidence that police intentionally or recklessly omitted key facts from the warrant application, there can be no Fourth Amendment violation here. *Hartman v. Bowles*, 39 F.4th 544, 546 (8th Cir. 2022) (*per curiam*); *Hawkins v. Gage County*, 759 F.3d 951, 958-59 (8th Cir. 2014).

Last, because no Wynne official committed an unconstitutional act, the city cannot be liable under § 1983. *Webb v. City of Maplewood*, 889 F.3d 483, 486-87 (8th Cir. 2018).

**Count V.** This claim fails as a matter of law. The defendants "cannot be held liable under § 1983 on a respondeat superior theory." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 976 (8th Cir. 1993).

**Counts VI–IX.** In the absence of any federal question, the Court declines to exercise supplemental jurisdiction over Williams's claims arising under state law. 28 U.S.C. § 1367(c)(3); *McManemy v. Tierney*, 970 F.3d 1034, 1040-41 (8th Cir. 2020).

**Count X.** Williams's Arkansas Civil Rights Act claims here track her § 1981 claims in Count I. When the Court ruled on the Hibbett defendants' motion to dismiss, it dismissed both counts *with* prejudice. *Doc. 40 at 3*. But because no federal claims remain, the Court revises its

earlier ruling and likewise declines supplemental jurisdiction over Count X. That requires dismissal *without* prejudice. *Labickas v. Arkansas State University*, 78 F.3d 333, 334 (8th Cir. 1996) (*per curiam*).

\*   \*   \*

The defendants' separate motions for summary judgment, *Doc. 77 & Doc. 80*, are granted as specified and denied without prejudice on the state law claims. The dueling motions to strike various papers, *Doc. 98 & Doc. 104*, are denied. The Hibbett defendants' motion to exclude or limit the testimony of Williams's expert, *Doc. 83*, is denied as moot.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

6 September 2024

# Claims Chart[*]

*Williams v. Hibbett Inc., et al.*, **3:22-cv-2-DPM**

| Count | City Defendants | Hibbett Defendants |
|---|---|---|
| **I** – § 1981 (not under color of law) | Clark; Parker; & Hallmark | *Dismissed.  Doc. 40.* |
| **II** – § 1981 (respondeat superior) | City of Wynne | Hibbett Retail, Inc. & Hibbett Wholesale, Inc. |
| **III** – § 1981 (under color of law) | All | All |
| **IV** – § 1983 (equal protection; malicious prosecution; unlawful arrest; failure to train) | All | All |
| **V** – § 1983 (respondeat superior) | City of Wynne | Hibbett Retail, Inc. & Hibbett Wholesale, Inc. |
| **VI** – Malicious prosecution (state law) | All | All |
| **VII** - Outrage | All | *Dismissed.  Doc. 40.* |
| **VIII** – False Light | All | *Dismissed.  Doc. 40.* |
| **IX** – ACRA (under color of law) | All | All |
| **X** – ACRA (not under color of law) | All | *Dismissed.* |

**Key:**

| |
|---|
| Fail because no protected activity. |
| Fails because no state actor. |
| Fails because no respondeat superior theory of liability. |
| Declined supplemental jurisdiction. |

---

[*] In an earlier Order, the Court dismissed Jason Stricker as a defendant. *Doc. 40 at 5*.  The Court also granted the city's unopposed motion, *Doc. 22*, to dismiss Williams's claims against the Wynne Police Department.